**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10742
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ADRIAN LACEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00101-KD-MU-1

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Adrian Lacey appeals his conviction for conspiracy to commit wire fraud, wire fraud, money laundering conspiracy, and aggravated identity theft. The sole question on appeal is whether

the district court plainly erred by admitting at trial the contents of a phone seized from Lacey's prison cell.  It did not.  Accordingly, after careful review, we affirm.

## I.     Background

In May 2023, Lacey was indicted on various charges related to a scheme to submit fraudulent Economic Injury Disaster Loan ("EIDL") applications during the COVID-19 pandemic.  At trial, Phung Lam, a lieutenant at the federal prison in Forrest City, Arkansas, where Lacey was incarcerated in 2020,[1] testified that he searched Lacey's cell and discovered a pink cell phone hidden inside a book placed under a mattress.[2]  The parties stipulated that the records produced from a data extraction of the pink phone were a true and accurate copy of the data contained on the phone.  The extraction showed that "Adrian" was the identified owner of the phone.

The government introduced text messages from the pink phone to connect Lacey to the fraudulent EIDL applications.  For example, several text messages mentioned an address where proceeds of the EIDL fraud were mailed.  Another text message contained a link to IRS forms, which was relevant because IRS forms were attached to the EIDL applications.  Finally, in one text

---

[1] At the time of the underlying offenses, Lacey was serving a term of imprisonment on unrelated charges.

[2] It was disputed at trial whether Lacey or his cellmate slept on the mattress under which the pink phone was found.

message, the user of the pink phone indicated that he was on the phone with one of the financial institutions listed on the EIDL applications.

The jury found Lacey guilty of conspiracy to commit wire fraud, wire fraud, money laundering conspiracy, and multiple counts of aggravated identity theft.[3] Lacey appealed.

## II.    Discussion

On appeal, Lacey argues that the district court committed plain error in admitting text messages from the pink phone because they were not properly authenticated and identified as being written by Lacey. To support his argument, Lacey contends that there was evidence that multiple people used the pink phone.

We review the authenticity of evidence for plain error when no objection to authenticity was raised below. *United States v. Deverso*, 518 F.3d 1250, 1255 (11th Cir. 2008). "The admission of evidence constitutes plain error when the evidence was so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, the district court, *sua sponte*, should have excluded the evidence." *United States v. Daniels*, 91 F.4th 1083, 1095 (11th Cir. 2024) (quotations omitted). We will only disturb a district court's authenticity determination on appeal if "there is no competent evidence in the record to support it." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).

---

[3] The jury failed to reach a verdict with respect to several additional charges.

4                    Opinion of the Court                    25-10742

To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The proponent of a piece of evidence need not definitively prove the authenticity of the evidence; they merely need to "present[] sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be." *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) (quotation omitted). "Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." *Id.*

Here, the government met its "light" burden of authenticating the text messages on the pink phone. *See  In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015). We have held that the government established a *prima facie* case of authenticity for a document containing rap lyrics when the document was found in the defendant's suitcase and bore signatures of the defendant's aliases. *Belfast*, 611 F.3d at 819. Similarly, here, the government claimed that Lacey sent the text messages on the pink phone, and it made a *prima facie* case that he sent the messages by offering evidence that the phone was seized from his cell and that an extraction of the phone listed the phone's owner as "Adrian," Lacey's first name.

While Lacey argued at trial that his cellmate had access to the pink phone and could have sent the text messages, the government put forth a *prima facie* case of authenticity and was not required to prove "the ultimate question of authenticity," which is

decided by the jury. *Id.* Thus, the government properly authenticated the text messages on the pink phone.[4]

Lacey also briefly argues that the text messages were inadmissible hearsay. But the government offered the text messages as Lacey's (an opposing party's) statements, which are not hearsay. Fed. R. Evid. 801(d)(2)(A). To the extent that Lacey argues the government failed to meet its burden of proving that the text messages were Lacey's statements, the fact that the pink phone was found in his cell and the phone listed its owner as "Adrian" precludes us from finding that "the evidence was so obviously inadmissible and prejudicial that . . . the district court, *sua sponte*, should have excluded the evidence." *See Daniels*, 91 F.4th at 1095 (quotations omitted).

### III.    Conclusion

For the above reasons, the district court did not plainly err in admitting the text messages from the pink phone. Accordingly, we affirm.

**AFFIRMED.**

---

[4] It is unclear to us based on Lacey's briefing, but to the extent that he challenges the authentication of text messages from two other phones seized from his cell, we find that the district court did not plainly err because one of those phones was seized from Lacey's waistband and the other was seized after a correctional officer found Lacey in possession of the phone and watched him place the phone in his cellmate's pocket.